## DIXIE COTTON MACHINERY CO. et al. v. GARBER.

### No. 11667.

Court of Civil Appeals of Texas. Dallas.

Oct. 21, 1933.

Sullivan & Wilson, of Dallas, for appellants.

Burr S. Cameron, of Dallas, for appellee.

BOND, Justice.

This is an appeal from an order appointing a receiver to take charge of all properties, real and personal, of the Dixie Cotton Machinery Company and the Dixie Cultivator Corporation, both incorporated under the laws of the state of Delaware. Suit was instituted by D. T. Garber, appellee, claiming to be a creditor of the Dixie Cultivator Corporation, successor to the Dixie Cotton Machinery Company, alleged to be insolvent. The petition was filed on September 11, 1933, notice was waived and service accepted by Paul S. Curtis, as assistant secretary-treasurer, and, on hearing, the court

appointed a receiver, with power to preserve, manage, and prevent dissipation of the properties for the benefit of creditors until further orders of the court. No power of sale was authorized, and no notice, other than that given to Curtis, was given to the corporation.

The petition for a receiver alleges that: "On or about the 10th day of June, 1933, the defendant, acting by and through its duly authorized Board of Directors and agents, by resolution, duly entered upon the minute books of said defendant, entered into an agreement with plaintiff, whereby plaintiff was employed as general manager of said corporation, at a salary of 100 per week, and immediately thereafter he entered upon his duties as such manager, and has continued to so perform said duties for said defendant corporation; that, as a result of said employment, the corporation is due him for unpaid salary the sum of $640; that the principal assets of defendants consists of patents and patent rights, machinery and real estate; that said real estate is covered by liens and the property and assets of defendant are covered by liens, and the amount due said lien creditors is in excess of the amount of $5,000; that, in addition thereto, defendant is indebted in the excess of $2,500, and has accounts payable to general creditors, including plaintiff, in the aggregate of $1,500; that defendant has accumulated more liabilities than the total value of all its assets and property, it has ceased to pay its debts in the regular course of business, and is insolvent, daily incurring expenses and debts it cannot in reason pay, the property is daily deteriorating in value, and is in danger of being materially injured by inattention; that the assets of defendant are insufficient to discharge its liabilities, and will become more so, unless such property and assets are cared for." Thus, we have a unique situation: The facts presented by the pleadings, in general terms, disclose the insolvent condition of the corporation, "its property daily deteriorating and in danger of being materially injured by inattention," and that the application for receiver comes from one to whom the corporation had intrusted the management of its affairs, and that such conditions exist, because of the misfeasance of said manager, who, for lack of attention, permitted the property to deteriorate and be in danger of injury.

The record discloses that, on June 17, 1933, Paul S. Curtis resigned as assistant secretary-treasurer of the corporation, and, at the time of notice being waived and service of citation accepted by him as a corporate official, he was a laborer, employed by the corporation as a designer, developer, and builder; the record does not disclose that he was authorized to waive such notice, or accept service for the corporation; the petition, nor the testimony produced on the hearing, discloses an immediate and pressing necessity for the appointment of a receiver, without notice to the corporation.

On September 13, 1933, a motion to vacate the order entered on September 11, 1933, appointing a receiver, was presented to the court and refused. From that order this appeal has been perfected.

We are of the opinion that the appointment of the receiver was made without notice, as Curtis had no authority to accept service; the court was not warranted in assuming such drastic action, dispossessing the rightful owner of his property and placing same in the hands of another on an ex parte claim, as the petition does not disclose any emergency demanding the immediate interference of the court. 53 C. J. 59, par. 54, reads: "A receiver may be properly appointed without notice, and before giving the adverse party an opportunity to be heard, in, and only, in an extreme and exceptional case, in which there is a great emergency, and an imperious and most stringent necessity for an immediate appointment, as where the adverse party is out of the jurisdiction of the court or cannot be found and served with notice, or, for some other reason, it is absolutely and imperatively necessary for the court to interfere, before the lapse of the time required to give notice and afford a hearing, in order to prevent loss, waste, destruction, irreparable injury, or the defeat of the petitioner's rights, or the giving of notice would jeopardize the delivery, safety, custody, or control of the property over which the receivership is to be extended, and the rights of the complaining party may be amply and sufficiently protected in no other way, or by no other remedy, such as a temporary injunction or restraining order. * * *"

We grant the soundness of the contention that one coming voluntarily into court, after the order of appointment, thereby obtaining all of the benefits of notice by requesting a hearing to vacate the order previously entered, without notice, appointing the receiver, waives any error in the appointment as to notice. Lacey v. Dayton Rubber Mfg. Co. (Tex. Civ. App.) 270 S. W. 916. However, the vacation order refusing to set aside the drastic action of the court, condemning the corporation, dispossessing it of its property, and handing over its entire control to another, is based on proceedings previously entertained by the trial court, in which the defendant had no opportunity of defense, and appellant's pleadings to vacate, which challenged under oath the justness of plaintiff's debt, the insolvency of the corporation, and alleges a motive prompting the action, must necessarily lead this court to

examine the entire record, with the purpose in view of ascertaining whether the court abused its discretion, in refusing to set aside the receivership.

The order, refusing to vacate the receivership, recites that the action of the court is based on the "pleadings of plaintiff and defendant and the record of the testimony in this case." The record comes to this court, accompanied by a transcript of the testimony offered on the hearing for the appointment of a receiver, adduced by appellee for a consideration on this appeal. Therefore, it is in order to examine proceedings and the testimony presented on the occasion of the appointment, along with appellant's application to vacate. It is stated in defendant's pleadings, under oath, that the indebtedness claimed by appellee is not true and correct; that it was not indebted to plaintiff in any sum; that it is not insolvent, and if insolvent it had been rendered so by the misconduct of plaintiff; that the suit is instituted by plaintiff and connived in by said Paul S. Curtis, both being former officials of said corporation, to wit, Garber being president and Curtis being assistant secretary-treasurer, both having resigned before the institution of the suit; and that the suit is brought for the purpose of harassing and injuring said corporation.

Appellee testified that he was engaged by the corporation to produce a machine that would chop and cultivate cotton simultaneously; that said machine was in the process of being manufactured, but for lack of funds ($25) the work was discontinued; that, because of such delay, the machine is deteriorating in value, "expenses piling up larger and larger," and his chance of collecting salary due is waning. He further testified that he was employed to organize a body of experienced implement men that could manufacture and market this product, and under such employment brought Mr. Curtis into the deal, as well as Dean Parrott, "one of the foremost engineers in the country"; that, instead of the legitimate development of a business, they are "being made the background for the unloading of personally held stock on the public by this particular stockholder, at a price entirely out of keeping with its value."

The impression thus made by appellee's entire pleadings and the testimony adduced is that appellant is indebted in excess of $9,000, its property incumbered by liens and indebtedness, which it is unable to pay, and that it possesses valuable patents and patent rights, which, if properly handled, would substantially enure to the benefit of stockholders and creditors of the corporation; that appellee was a managing official of the corporation, whose duty it was to manage, design, manufacture, and develop the manufacturing product, which, if carried to final conclusion, would develop a valuable asset, but for the lack of a comparatively few dollars, now unavailable, it is unable to carry the venture further.

■■ The primary object of proceedings in equity against insolvent and failing corporations, which proceedings are authorized by statute, is to protect and preserve the corporate assets for the benefit of creditors. Our statutes provide that a receiver be appointed for a corporation when it is insolvent, or in danger of insolvency. Article 2293, R. S. 1925. We are of the opinion that the facts presented to the court by appellee, in very general terms, disclose a condition of the corporation that, if specifically itemized, would show it to be insolvent, and that the application for a receiver comes from one to whom it was indebted. If said facts had been unchallenged, the court would have been authorized to appoint the receiver; but the indebtedness is challenged and the insolvency of the corporation is denied under oath; thus, the court should not have appointed the receiver and denied appellant's application to vacate without further inquiry. The petition for the receiver is entirely too vague, general, and indefinite as to the name of creditors of the corporation, the amount and value of the assets, and the amount of its indebtedness; no lien creditor has joined in the application for the appointment of a receiver to take charge of property in which they are interested. The evidence gives no further enlightenment on these facts; thus, in view of appellant's sworn denial, leaves to conjecture the insolvency of appellant. Therefore, from a review of the entire record, we are constrained to hold that the trial court was not warranted in appointing the receiver ex parte, without notice to appellant, and in overruling appellant's motion to vacate, without further inquiry as to the insolvency of the corporation and the indebtedness of appellee. It is the duty of this court, therefore, to reverse and remand this case in favor of appellant, vacating the receivership, and it is so ordered.

■ We deem it advisable to suggest that, in appointing a receiver, too great haste should not be indulged in, and time should be taken to allow parties affected to be heard on the occasion of the appointment, and on the aggrieved party's petition to vacate. A restraining order for a limited time, until all the facts may be heard, could hurt no one, but might be the means of preventing oppression and ill-advised interference with the rights in property. We believe it proper to make this expression, in view of a statement of the trial court appearing in the record, to the effect that the attorney promised to present the facts "in five minutes," and the further reason that, too often, cases are appealed from orders pertaining to the appointment of re-

ceivers and the issuance of an injunction on ex parte claims and ex parte hearings, without notice, usually in chambers; when a more timely hearing would avoid the complications incident to such haste.

Reversed and remanded.